**NATIONAL TRADE TRUST, INC., Appellant,**

v.

**MERRIMAC CONSTRUCTION, Defendant and Third–Party Plaintiff, Respondent,**

v.

**HEART DRYWALL, et al., Third–Party Defendants.**

No. C3–94–1427.

Court of Appeals of Minnesota.

Nov. 15, 1994.

Robert R. Roos, Minneapolis, for Nat. Trade Trust, Inc.

Paul S. Jacobsen, Briggs & Morgan, Saint Paul, for Merrimac Const.

Before RANDALL, P.J., and SCHUMACHER and JONES*, JJ.

## OPINION

RANDALL, Judge.

Appellant National Trade Trust, Inc. (National) challenges judgment entered on April 5, 1994, denying its claim for reimbursement of $19,418 from respondent Merrimac Construction Co., (Merrimac). Merrimac, after receiving a notice of assignment to National by assignor Heart Drywall, erroneously paid Heart Drywall instead. Merrimac denies liability, claiming that it may assert as a defense to reimbursement, a setoff which it failed to claim at the time of the erroneous payment but obtained later. We reverse.

## FACTS

Appellant, National, is a finance company which lends capital to businesses. On July 19, 1991, National contracted with Heart Drywall to provide necessary capital for a construction project in which Heart Drywall was a subcontractor for Merrimac. As consideration, Heart Drywall assigned to National certain invoices for accounts receivable from Merrimac. Merrimac paid the first assigned invoice, dated July 10, 1991, to National minus appropriate deductions. Merrimac, however, did not pay the second invoice, dated August 12, 1991, to National but to the assignor, Heart Drywall. Merrimac paid Heart Drywall $19,418, the invoice amount minus appropriate reductions. Merrimac acknowledges that it received notice of the assignment and also acknowledges that it mistakenly paid Heart Drywall instead of National.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

Subsequently, Merrimac obtained a default judgment for $62,766.31, against Heart Drywall which it now claims as a setoff to any reimbursement owed to National for the erroneous payment. Additionally, Merrimac counterclaimed, seeking recoupment from National of the amount paid on the assigned July 10, 1991, invoice claiming National should repay that amount because of Merrimac's subsequently claimed setoff. The trial court denied the counterclaim.

## ISSUE

Did the trial court err by denying appellant National's request for reimbursement of an assigned account receivable which Merrimac erroneously paid to the assignor?

## ANALYSIS

Article 9 of the Uniform Commercial Code, "applies to * * * security interests in accounts" such as financial arrangements. *Tradex, Inc., v. Modern Merchandising, Inc.,* 386 N.W.2d 800, 802 (Minn.App.1986); *accord* Minn.Stat. § 336.9–102 (1990). With respect to assignments of accounts:

> The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee.

Minn.Stat. § 336.9–318(3) (1990).

Accordingly, once an account debtor receives notice that an amount owed has been assigned, the debtor loses the authority to pay the assignor. *Id.* It is undisputed that Merrimac had notice that the August 12, 1991 invoice was assigned to National. It is also undisputed that Merrimac erroneously paid that invoice to the assignor rather than National. According to this court in *Tradex,* "[T]he account debtor's failure to pay the assignee after receiving due notification gives rise to an assignee's claim for wrongful payment." *Id.* at 803 (quoting *Ertel v. Radio Corp. of America,* 261 Ind. 573, 307 N.E.2d 471, 473 (1974)). Absent a valid setoff, Merrimac was obligated, as a matter of law, to pay National. Having failed to do so, Merrimac is liable for the erroneous payment made to Heart Drywall.

Merrimac argues that it has a valid setoff arising from the judgment it obtained later against Heart Drywall and that it may assert that setoff against National's claim for reimbursement. Merrimac relies on Minn. Stat. § 336.9–318(1) (1990) cmt. 1, which reads:

> When the account debtor's defenses on an assigned claim arise from the contract between him and the assignor, it makes no difference whether the breach giving rise to the defense occurs before or after the account debtor is notified of the assignment.

Merrimac's reliance on this section of the statute is misplaced and distorts the real issue which is Merrimac's wrongful payment of an assigned invoice to the assignor. Although Merrimac obtained a judgment against Heart Drywall later, that fact is irrelevant because Merrimac paid the assigned invoice directly to Heart Drywall (failing to honor the assignment to National it acknowledges receiving) without asserting any setoff. Put another way, when Merrimac received a bill from Heart Drywall for the $19,418, it had a perfect right to delay payment to Heart Drywall or any assignee of Drywall and claim that the work was defective or claim any other defense on the merits it might have to the bill. That defense against Heart Drywall's claim would also be good against assignees, such as National, unless and until Merrimac paid Heart Drywall the $19,418 voluntarily or pursuant to court order. If Merrimac had failed to honor Heart Drywall's demand for the $19,418, National would have had no right to step in and demand that Heart Drywall be paid on the spot (meaning paid to National as the appropriate assignee of Heart Drywall) because in general, assignees stand in no better shoes than the assignor. *Meyers v. Postal Finance Co.,* 287 N.W.2d 614, 617 (Minn.1979).

But the one thing Merrimac cannot do is ignore a valid assignment, pay the assignor, then later obtain a judgment against the assignor, and claim that judgment is retroactively good against the assignee. Merrimac failed to raise its defense to Heart Drywall's claim in a timely fashion (meaning timely as to assignee National), paid Heart Drywall in

the face of a possible later defense against Heart Drywall, and ignored National's valid assignment.

Merrimac must pay the $19,418 to National and whatever costs, disbursements, and/or interest that the trial court deems appropriate. Merrimac's recourse is to proceed against Heart Drywall for that $19,418, if it is not already included in the $62,766.31 default judgment it holds against Heart Drywall. Neither party here is prejudiced by this reversal. Its net effect is that Merrimac, rather than National, has to suffer the possibility that Heart Drywall is insolvent. That penalty must rest with Merrimac because it paid Heart Drywall in the face of a valid assignment without asserting its claim for faulty workmanship until later. An account debtor that erroneously pays the assignor after receiving notice of assignment waives any claim to a setoff against the assignor raised for the first time *after* the assigned debt was paid.

The decision of this court is to reverse and remand to the trial court, with both parties given the opportunity to present their position on costs, disbursements and interest.

## DECISION

The trial court erred in denying National its right to recover $19,418 from Merrimac for the erroneously paid assigned invoice.

**Reversed and Remanded.**